Edward **CLAUDIO** and Edna **Claudio** Plaintiffs,

v.

**UNITED STATES** of America and Ken's Marine Service, Inc. in personam, and T/B **NATHAN BERMAN**, et al. Defendants.

No. CV–94–5220.

United States District Court, E.D. New York.

Nov. 16, 1995.

John P. James, Friedman, Biondi & James, New York City, for plaintiffs.

Joseph Donat, Herzfeld & Rubin, New York City, for Ken's Marine.

Janis G. Schulmeisters, Zachary W. Carter, Frank W. Hunger, and United States Department of Justice, Torts Branch, Civil Division, New York City, for the U.S.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

### BACKGROUND

This is an action by plaintiffs Edward Claudio and Edna Claudio seeking damages for personal injuries sustained by Edward Claudio ("Claudio") on October 1, 1993, when he fell into the hold of the tank barge Nathan Berman. Defendant Ken's Marine Service Inc. ("KMS") was performing cleanup tasks on the Nathan Berman on that date pursuant to a contract with the United States Coast Guard for the removal of the hazardous substance. On June 3, 1993, the United States Coast Guard issued to the owner and operator of the Nathan Berman a Notice of Federal Assumption for a Hazardous Substance Incident, and entered into a contract with KMS for cleanup of the barge on the same day.

Defendant United States has cross-claimed against defendant KMS alleging that under the terms of their contract, KMS is obligated to indemnify the United States for any loss, damage, or injury arising from the work it undertook to perform, and for all or part of any verdict or judgment a plaintiff may recover against the United States. The United States also alleges that any damages sustained by Claudio were caused by the negligence of KMS and that the United States would therefore be entitled to contribution from KMS based upon apportionment of fault.

Claudio has received workers' compensation benefits from Ken's Marine and Oil Service, Inc. ("KMOS") for the above-mentioned injury. However, he brings this suit against defendant KMS, alleging that KMS was not his employer on the date he was injured; Claudio asserts that only KMOS employed him on that date.[1] KMS asserts that Claudio

---

1. Plaintiff's arguments are made notwithstanding the fact that he signed onto the Nathan Berman

was working jointly for KMS and KMOS on the date in question, that both KMS and KMOS were involved in removing the hazardous materials on the Nathan Berman pursuant to a contract with the Coast Guard, and that KMS and KMOS were engaged in a joint venture.

Based on its theory that the defendant was employed jointly by KMS and KMOS, defendant KMS has moved for an order pursuant to Rule 12(b)(6) and/or rule 56 Federal Rules of Civil Procedure granting summary judgment dismissing plaintiffs' complaint and all cross claims against it. KMS asserts that this action is barred by section 905 of the Longshore and Harborworkers Compensation Act, 33 U.S.C. § 901 et seq. ("LHWCA"), under which an employer who provides his employee with the insurance benefits required by statute has no other liability toward the employee for injuries. 33 U.S.C. §§ 904, 905(a). KMS also asserts that the United States was the owner *pro hac vice* of the Nathan Berman at the time of the accident, that the plaintiffs' action against the United States is for negligence in that capacity and that accordingly, the United States' cross claims against KMS are barred by 33 U.S.C. § 905(b).

## DISCUSSION

### Summary Judgment

■ Summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In order for the moving party to be successful, it must "point[ ] out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1985). In opposing a properly supported summary judgment motion, "an adverse party may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a *genuine issue* for trial." Fed.R.Civ.P. 56(e) (emphasis added).

on the date of the accident listing his company

■ In deciding a summary judgment motion, the court need not resolve disputed issues of fact, but need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co., Inc. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmoving party, therefore, must come forward with *facts*, and not doubts as to the veracity of the moving party's allegations: "Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. "The mere existence of factual issues [pertaining to immaterial facts] will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985). The nonmovant "must do more that simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

### Applicability of the Longshoremen's Act

Defendant KMS argues for summary judgment based on the LHWCA, which provides:

(a) Except as otherwise provided in this section, compensation shall be payable under this Act in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).

33 U.S.C. § 903.

Under the LHWCA, the liability of an employer who provides his employee with the

name as "KMS." *See* Supp.Donat Aff. Ex. C.

insurance benefits prescribed by statute is "exclusive and in place for all other liability of such employer to the employee, his legal representative, husband or wife ..." 33 U.S.C. § 905(a). "[E]mployer" under this statute includes "an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States." 33 U.S.C. § 902(4). "Employee" means "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuild-er, and ship-breaker." 33 U.S.C. § 902(3).

■ The work performed by Claudio on the Nathan Berman involved maritime employment upon the navigable waters of the United States. *See generally Director, OWCP v. Perini North River Assoc.*, 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983). The LHWCA therefore bars any recovery by Claudio from his employer other than that provided under this statute.

*KMS as Claudio's Employer*

In support of its contention that KMS was Claudio's employer on the date of the accident, KMS has submitted a Daily Safety Meeting Attendance Sheet for the date of Claudio's accident in which Claudio wrote "KMS" under the heading "company." Supp.Donat Aff.Ex. C. KMS has also submitted evidence of two separate accident reports filed with the State of New Jersey, one listing plaintiff's employer as KMS and the other listing the employer as KMOS. KMS has submitted W2 forms issued to Claudio by KMS, and a photograph of Claudio in a KMS uniform. Neither the photograph nor the W2 forms, however, make reference to the date of the accident.

Claudio has not specifically denied that he was employed by KMS on the date in question. However, he has submitted an affidavit in support of his contention that he was an employee of KMOS at the time of the accident, based on the fact that "In 1989 or 1990, I and other employees of KMS were transferred to, and became employees of, Ken's Marine and Oil Service, Inc. ("KMOS"). Thereafter, and as far as I was concerned and understood, I was an employee of KMOS and retained that status through the date of my accident on October 1, 1993." Claudio Aff. ¶ 4. Although Claudio does not deny receiving checks and W–2 forms from KMS during the years in which he states he was employed by KMOS, he asserts that he does "not know the basis for the monies paid to me by KMS shown on the W–2 forms." Claudio Aff. ¶ 5. In addition, Claudio states that he does not know who employed his two immediate supervisors. Claudio Aff. ¶ 7. He also states that he did not wear any type of shirt containing an employer's logo. Claudio Aff. ¶ 9.

As is hereafter demonstrated, the unique relationship between KMS and KMOS requires that the protection afforded to KMOS as Claudio's employer under the LHWCA be extended to KMS as well.

*The Joint Venture*

Defendant KMS argues that a joint venture existed between KMS and KMOS and that the LHWCA therefore precludes Claudio's recovery from KMS. *See generally Heavin v. Mobil Oil Exploration and Producing Southeast, Inc.*, 913 F.2d 178 (5th Cir.1990); *Haas v. 653 Leasing Co.*, 425 F.Supp. 1305 (D.C.Pa.1977). In support of its position that KMS and KMOS were joint venturers, defendant KMS has submitted an affidavit by Kenneth Poesl, President and Treasurer of KMS. In his affidavit, Mr. Poesl states that while KMS and KMOS originally started as separate companies, they "have become commingled to a point that it is impossible to differentiate any distinction between" them; the companies shared the same corporate offices, had the same address, operated out of the same office, and have the same post office box, the same telephone number, and the same fax number. Poesl Aff. at 2. Mr. Poesl asserts that both companies "shared or allocated the costs of a particular job, and also the profits or payments from a particular job." Poesl Aff. at 2–3.

Mr. Poesl additionally asserts that all of the "employees, customers, colleagues in the industry and regulatory agencies acknowledged Ken's Marine and Ken's Marine & Oil

as one company." Poesl Aff. at 3. Finally, he states that "[b]ecause it was clearly understood that both companies acted as one to perform any work, no formal joint venture agreement per se was ever entered into by myself as President of Ken's marine and myself as President of Ken's Marine & Oil." Poesl Aff. at 4.

 While a formal written agreement is not necessary to create a joint venture, "an agreement between the parties to create a joint venture is essential." *Backus Plywood Corp. v. Commercial Decal, Inc.,* 208 F.Supp. 687, 687 (S.D.N.Y.1962), *aff'd in part, appeal dismissed in part,* 317 F.2d 339 (1963), *cert. denied,* 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963); *In Re PCH Assoc.,* 949 F.2d 585, 599 (2d Cir.1991). It is axiomatic that an agreement requires at least two parties, but to require Mr. Poesl to assume two different personae and as chief executive officer of KMS to agree with himself as chief executive officer of KMOS would exalt form over substance and unwisely transmogrify legal fiction into reality. Mr. Poesl's statement that KMS and KMOS were "so commingled to a point that it is impossible to differentiate any distinction between" them tends to demonstrate the existence of a single entity, rather than the two separate entities required to create the agreement necessary for a joint venture.

In addition, "a joint venture is usually arranged for a single transaction whereas a partnership is formed to conduct a continuing business." *In Re PCH Assoc.,* 949 F.2d at 599 (applying Pennsylvania law). *See also Backus Plywood Corp. v. Commercial Decal, Inc.,* 208 F.Supp. at 690–91 (citing cases) ("As a general rule joint ventures are thought of in relation to a specific venture, a single undertaking, although the undertaking need not be one susceptible of immediate accomplishment. It is in the nature of a partnership limited to a particular venture, not general in operation or duration."). The application of the general rule to the facts as stated by Mr. Poesl point more convincingly to a single entity with two branches rather than a joint venture.

Although disagreeing with the assertion made by KMS that a joint venture existed between KMS and KMOS, I find that the facts alleged establish that KMS and KMOS operated as a single entity. The cases which hold that the LHWCA applies to joint ventures, as well as cases applying the New York Workers' Compensation Law, and cases interpreting statutes in other areas of law, teach that the ties between KMS and KMOS establish the existence of a single entity for purposes of prohibiting recovery from KMS under the LHWCA.

*KMS and KMOS as a Single Entity*

In *Heavin v. Mobil Oil Exploration and Producing Southeast, Inc.,* 913 F.2d 178 (5th Cir.1990), a joint operating agreement existing between the defendants created a joint venture for LHWCA purposes; the parties did not dispute that each member of a joint venture attains LHWCA tort immunity against the employees of the joint venture. The court rejected the plaintiff's argument that the fact that only one of the joint venturers paid his wages and disability benefits, and provided him with tools and supervision for his work, meant that he was an employee of this company only and not of the joint venture. *See also Davidson v. Enstar Corp.,* 860 F.2d 167 (5th Cir.1988) (on reh'g).

In *Haas v. 653 Leasing Co.,* 425 F.Supp. 1305 (D.C.Pa.1977), the court distinguished the general contractor/subcontractor relationship from the relationship existing among joint venturers for purposes of the LHWCA. The court found that while the LHWCA does not apply in the contractor/subcontractor relationship because these entities do not share the profits of their labors, or have a joint proprietary interest or right of mutual control over the enterprise, the characteristics of a joint venture meet the requirements for precluding liability of all joint venturers under the LHWCA.

*The separate entity, the joint venture, is the de facto employer of the workers carrying out the purposes of the venture,* even though technically the workers may be on the payroll of only one of the venturers and that particular venturer may provide the workers' workmen's compensation coverage. We hold that the joint venture and, derivatively, the participants in the ven-

ture, are thus the worker's "employer" for purposes of the Act and thus enjoy the protection of the exclusive remedy provision.

*Haas,* 425 F.Supp. 1305 (emphasis added).

■ The courts have held that the New York Workers' Compensation Law, and decisions construing the same, are "very persuasive" in the interpretation of the LHWCA, because the LHWCA was based largely on the New York law. *See Iacone v. Cardillo,* 208 F.2d 696 (2d Cir.1953); *Smither & Co., Inc. v. Coles,* 242 F.2d 220, 222–23 (D.C.Cir.), *cert. denied,* 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1429 (1957). *See also Haas v. 653 Leasing Co.,* 425 F.Supp. 1305 (D.C.Pa.1977) (relying on New York law). The New York Workers' Compensation Law defines "employer" as "a person, partnership, association, corporation, and the legal representatives of a deceased employer, or the receiver or trustee of a person, partnership, association or corporation, having one or more persons in employment." N.Y.Work.Comp.Law. § 2 (McKinney's 1992). New York courts in interpreting the Workers' Compensation Law have explicitly held that it applies to joint ventures. *See Fallone v. Misericordia Hosp.,* 23 A.D.2d 222, 259 N.Y.S.2d 947, 952 (1965), *aff'd,* 17 N.Y.2d 648, 269 N.Y.S.2d 431, 216 N.E.2d 594 (1966). The reasoning used in these cases may be applied in the present case as well:

> We see no reason in law or public policy why such [workers' compensation] insurance should not insulate the members of the joint venture from liability for negligence where an employee of the joint venture has been injured.... *the purposes of the Workmen's Compensation Law are not hindered or frustrated if members of such joint ventures are permitted to free themselves of common-law liability for injuries to employees so long as adequate workmen's compensation insurance is obtained.* The Workmen's Compensation Law was designed not only to assure injured employees of certain compensation but also to afford protection to employers against excessive claims for injuries."

*Id.* (emphasis added).

■ The New York cases make clear that employers' immunity under the New York Workers' Compensation Law is not limited to joint venturers but also applies to other types of employer relationships. The exclusive remedy provided by the New York Workers' Compensation Law applies "whether the relationship between two corporate entities is that of joint venturers, parent and subsidiary, corporate affiliates, or general and special employers." *Levine v. Lee's Pontiac,* 203 A.D.2d 259, 609 N.Y.S.2d 918, 919 (2d Dep't 1994). *See also Ploszaj v. Cooper Tank & Welding Corp.,* 213 A.D.2d 385, 624 N.Y.S.2d 615, 616 (App.Div., 2d Dep't 1995) ("Generally, a parent corporation may be deemed to be the employer of an employee of a subsidiary corporation for Workers' Compensation purposes if the subsidiary functions merely as the alter ego of the parent.") (citations omitted); *Carusone v. Three Centers (Olroho) Assoc.,* 124 A.D.2d 317, 508 N.Y.S.2d 289 (3d Dep't 1986) (holding that evidence presented sufficient showing of relationship between parent and subsidiary as to their status as one corporate entity, granting summary judgment motion dismissing claim against subsidiary); *Carinha v. Action Crane Corp.,* 58 A.D.2d 261, 396 N.Y.S.2d 191 (1st Dep't 1977) (holding that three sister corporations constituted a single business entity, where their separate corporate structures existed only for tax avoidance purposes, and affirming dismissal of the complaint under workers' compensation defense with respect to all three corporations). *See also Shine v. Duncan Petroleum Transport, Inc.,* 60 N.Y.S.2d 22, 466 N.Y.S.2d 672, 453 N.E.2d 1089 (1983).

Courts' willingness to look beyond the separate corporate existence of two corporations subject to single management and control is not limited to the area of worker's compensation law. "[T]he courts will look beyond the fiction of corporate entity and hold two corporations to constitute a single unit in legal contemplation, where one is so related to, or organized, or controlled by, the other as to be its mere agent, instrumentality, or alter ego." N.Y.Jur. ¶ 30.

The doctrine that two distinct corporate entities may constitute a "single employer" for labor purposes has been well developed

under the National Labor Relations Act ("NLRA"). *See* 29 U.S.C. § 152. Under this section of the NLRA, "several nominally separate business entities" are considered "a single employer where they comprise an integrated enterprise." *Radio & Television Broadcast Technicians Local 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965) (per curiam) (citing N.L.R.B. 21st Ann.Rep. 14–15 (1956)). "The controlling criteria, set out and elaborated in Board decisions, are interrelation of operations, common management, centralized control of labor relations and common ownership." *Radio & Telev. Broadcast*, 380 U.S. at 256, 85 S.Ct. at 877.

"A 'single employer' relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.' The question in the 'single employer' situation, then, is whether the two nominally independent enterprises, in reality, constitute only *one integrated enterprise.*" *NLRB v. Browning–Ferris Ind. of Pennsylvania, Inc.*, 691 F.2d 1117, 1122 (3d Cir.1982). "[T]he 'single employer' standard is relevant to the determination that 'separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise.'" *Browning–Ferris*, 691 F.2d at 1122 (quoting *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 402, 80 S.Ct. 441, 442, 4 L.Ed.2d 400 (1960).

■ Similarly, the coordinated activity of a parent and its wholly owned subsidiary is viewed as the activity of a single enterprise for purposes of section 1 of the Sherman act. "A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver. With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771, 104 S.Ct. 2731, 2741, 81 L.Ed.2d 628 (1983). The reasoning used by the Supreme Court in

determining that a parent and its wholly owned subsidiary should be viewed as a single entity for purposes of section 1 of the Sherman Act is also relevant here:

Antitrust liability should not depend on whether a corporate subunit is organized as an unincorporated division or a wholly owned subsidiary. A corporation has complete power to maintain a wholly owned subsidiary in either form.... Separate incorporation may improve management, avoid special tax problems arising from multistate operations, or serve other legitimate interests. Especially in view of the increasing complexity of corporate operations, a business enterprise should be free to structure itself in ways that serve efficiency of control, economy of operations, and other factors dictated by business judgment without increasing its exposure to antitrust liability.

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 772–73, 104 S.Ct. 2731, 2742–43, 81 L.Ed.2d 628 (1983).

■ The reasoning used in the above cases illustrates that there are many times when separate corporate existence is disregarded in favor of the reality of viewing the corporate organizations in question as a single entity. Such an outlook is appropriate in this instance, where all the available evidence demonstrates that KMS and KMOS functioned as a single entity and the LHWCA, like the New York Workers' Compensation Law upon which it is based, may be interpreted as "assur[ing] injured employees of certain compensation but also [ ] afford[ing] protection to employers against excessive claims for injuries." *Fallone v. Misericordia Hosp.*, 23 A.D.2d 222, 259 N.Y.S.2d 947, 952 (1965). Here, Mr. Poesl's uncontested affidavit conclusively establishes that KMS and KMOS worked in concert as a single entity, with interrelation of operations, common management, centralized control of labor relations and common ownership.

■ The nonmovants have not presented any evidence or allegations which specifically contradict Mr. Poesl's assertions that KMS and KMOS functioned as a single entity. The United States asserts that its contract for cleanup of the Nathan Berman was with

KMS and did not mention KMOS, but this fact does not contradict Mr. Poesl's assertions that the two companies worked together on all jobs and that the industry recognized the two companies as one entity. Claudio states that his being transferred to KMOS in 1989 meant that as far as he was concerned, KMOS was his employer, but he, too, does not affirmatively contradict Mr. Poesl's assertions that the two companies worked together as one. To defeat a motion for summary judgment, the nonmovant must allege the existence of specific facts in dispute; the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The evidence and affidavits presented by the nonmovants do not present affirmative facts which deny the facts alleged in defendant KMS' affidavits so as to defeat this motion for summary judgment.

The Court therefore finds that KMS and KMOS constituted a single entity for purposes of the LHWCA, and that the exclusivity provisions of the LHWCA extend to KMS in addition to KMOS. Summary judgment is hereby granted in favor of KMS against the plaintiffs. *The United States' Cross–Claims*

The LHWCA provides:

(b) In the event of injury to a person caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party ... and *the employer shall not be liable to the vessel* for such damages directly or indirectly and any agreement or warranties to the contrary shall be void.

33 U.S.C. 905(b) (emphasis added). KMS argues that by confiscating and/or seizing the Nathan Berman under the authority of the environmental protection laws, and arranging for the navigation of the vessel to a shipyard in Staten Island for the clean up, the United States became the barge's owner *pro hac vice.* Thus, KMS argues that the United States, as the vessel's owner, is precluded from recovering from KMS, as Claudio's employer. KMS' argument for summary judgment dismissing the United States' cross-claims against it therefore is based upon its assertion that the United States was the owner *pro hac vice* of the Nathan Berman on the date of Claudio's accident.

"Vessel" is defined under the LHWCA as "any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member." 33 U.S.C. § 902(21).

■ An owner *pro hac vice* for purposes of the LHWCA is one who assumes " 'exclusive possession, control, command and navigation' " of the vessel for [a] specific period of time, has complete, though perhaps only temporary dominion over the vessel entrusted to him and *commands her navigation and is entitled to avail himself fully of her services."* *Helaire v. Mobil Oil Co.,* 709 F.2d 1031, 1041 n. 15 (5th Cir.1983) (quoting *Bernier v. Johns–Manville Sales Corp.,* 547 F.Supp. 389, 394 (D.Me.1982) (emphasis added). In *Bernier,* the district court of Maine relied on the facts that the defendant could not use the vessel "for its own commercial ventures or for any other purpose normally within the prerogative of an owner" to decide that the third-party defendant was not the vessel's owner *pro hac vice.* *Bernier* at 394. *See also Olsen v. Todd Shipyards Corp.,* 435 F.Supp. 568, 571 (W.D.Wash.1977) ("A true owner pro hac vice has complete-though perhaps only temporary-dominion over the vessel entrusted to him. He commands her navigation and is entitled to avail himself fully of her services."); *Keller v. United States,* 557 F.Supp. 1218, 1229 (D.N.H.1983) ("Responsibility for some incidental movement of the vessel does not itself create the ownership-like relationship with the vessel necessary to establish ownership *pro hac vice."*).

■ None of the evidence presented on this motion for summary judgment establishes that the United States was the owner *pro hac vice* of the Nathan Berman. While the United States did exercise a measure of

control over the barge, this control was limited to the purposes of the cleanup tasks for which control was originally asserted. The affirmations of Coast Guard employees make clear that the Coast Guard's dominion over the Nathan Berman was limited to the response/removal of hazardous substances. *See* Larrabee Affir. ¶ 3. The United States never assumed the right to command the navigation of the Nathan Berman, nor to avail itself fully of its services. The limited nature of the United States' control over the Nathan Berman is illustrated in the Notice of Federal Assumption for a Hazardous Material Incident" issued to the owner of the Nathan Berman, which states "You are still responsible for the safety and security of the barge." Panagakos Affir., Ex. A.

None of the evidence submitted by defendant KMS establishes that the United States assumed full control of the Nathan Berman and had the right to command its navigation and avail itself fully of its services. In view of the determination made as regards the liability of KMS to the plaintiff, the cross-claims of the United States against KMS would appear to be moot, but, for the reasons stated, KMOS' motion for summary judgment against the United States is nevertheless denied.

### CONCLUSION

For the foregoing reasons, the court concludes as follows:

The motion of defendant KMS for summary judgment against plaintiffs Edward Claudio and Edna Claudio is granted;

The motion of defendant KMS for summary judgment against co-defendant United States is denied.

SO ORDERED.