Argued and submitted August 7, affirmed December 30, 2020

Ronald A. SANDERS,
*Plaintiff-Appellant,*

*v.*

VIGOR FAB, LLC,
an Oregon limited liability company,
*Defendant-Respondent.*

Multnomah County Circuit Court
17CV37480; A168740

480 P3d 999

After a workplace injury, plaintiff brought a negligence claim against Vigor Fab, LLC, under the Oregon Employer Liability Act (ELA), ORS 654.305 to 654.336. At the time of his injury, he was formally employed by a different company, Vigor Marine, LLC. Both Vigor Fab and Vigor Marine are wholly owned subsidiaries of Vigor Industrial, LLC. Before bringing his ELA claim, plaintiff received workers' compensation for his injury from Vigor Marine under the federal Longshore and Harbor Workers' Compensation Act (LHWCA), 33 USC §§ 901 to 950. The trial court granted Vigor Fab's motion for summary judgment on his ELA claim, concluding that, under federal labor law, Vigor Fab and Vigor Marine operated as a "single entity," and that their status as a single entity barred plaintiff's state law claim under the LHWCA's exclusive remedy provision. Plaintiff appeals, assigning error to that ruling, and arguing that Vigor Fab and Vigor Marine do not meet the criteria of a "single entity" for LHWCA purposes. *Held*: The trial court did not err. Based on the factors articulated in Claudio v. United States, 907 F Supp 581 (EDNY 1995), Vigor Fab and Vigor Marine are a single entity for LHWCA purposes. The LHWCA therefore bars plaintiff's ELA claim.

Affirmed.

Karin Johana Immergut, Judge.

Charles Robinowitz argued the cause and filed the briefs for appellant.

Alice Newlin argued the cause for respondent. Also on the brief were James P. McCurdy and Lindsay Hart, LLP.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Plaintiff brought this negligence action against Vigor Fab, LLC (Vigor Fab) under Oregon's Employer Liability Act (ELA), ORS 654.305 to 654.336, seeking to recover damages for injuries he sustained while trimming a steel deckplate for a barge being built by Vigor Fab. He had already filed a workers' compensation claim against his employer, Vigor Marine, LLC (Vigor Marine), under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 USC §§ 901 - 950. The trial court ruled on summary judgment that Vigor Fab and plaintiff's employer, Vigor Marine, were functionally integrated and, therefore, a "single entity" for purposes of the LHWCA. Consequently, Vigor Fab was, like Vigor Marine, immune from tort liability and plaintiff's case was dismissed as barred by section 905 of the LHWCA. Plaintiff assigns error to the court's granting of Vigor Fab's summary judgment motion, arguing that he was employed by Vigor Marine, not by Vigor Fab. He argues further that there remains a genuine issue of material fact concerning whether Vigor Fab and Vigor Marine are separate entities or a single entity for purposes of the LHWCA. We conclude that the trial court did not err in granting Vigor Fab's motion for summary judgment and we, therefore, affirm.

The question is whether, on the record presented, there exists a genuine issue as to whether Vigor Fab and Vigor Marine are a single entity entitling Vigor Fab to invoke the exclusive remedy provision of the LHWCA as a bar to plaintiff's ELA claim. On review of a grant of summary judgment, we view the facts and all reasonable inferences that may be drawn from them in favor of the nonmoving party—in this case, plaintiff. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. That standard is met when "'no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment.'" *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001) (quoting *Jones*, 325 Or at 408). We state the facts consistently with that standard.

Vigor Industrial, LLC (Vigor Industrial) owns several companies, including the two wholly owned subsidiaries involved here—Vigor Fab and Vigor Marine. Vigor Industrial is in the business of shipbuilding, ship repair, and complex industrial fabrication. The companies that comprise Vigor Industrial operate under common ownership, management, and control, and they share common executive leadership, senior management, and officers. As the parent entity, Vigor Industrial provides common core services and departments to all subsidiaries, including finance, payroll, information technology, human resources, procurement, risk management, environmental, and legal. Vigor Industrial's human resources department manages personnel matters for Vigor Fab and Vigor Marine, including overseeing employee benefits, hiring, termination, disciplinary issues, medical leave, and work-related injuries. Vigor Industrial calculates profits and losses on a consolidated basis rather than separately for each wholly owned entity. Vigor Industrial also provides procurement services and credit for both Vigor Fab and Vigor Marine, and it covers Vigor Fab and Vigor Marine employees for workplace injuries through the same certificate of insurance.

Vigor Fab builds ships and Vigor Marine repairs and maintains ships. They operate out of the same location, albeit from opposite ends of Vigor Industrial's Swan Island Shipyard facility on the Willamette River in Portland. And while Vigor Fab and Vigor Marine maintain their own tools and equipment, and conduct their own day-to-day operations, they share those premises, tools, and equipment, and they occasionally share personnel. Each entity hires and manages its own employees, but with the assistance of Vigor Industrial's human resources and central staffing departments. There are some notable differences between employees of Vigor Fab and those of Vigor Marine, including different job titles, different benefits, and different wage scales. Employees, customers, and outside regulators also generally regard Vigor Fab and Vigor Marine as separate entities.

Vigor Industrial processed plaintiff's job application, and it administered and processed his new hire paperwork, drug testing, medical testing, and orientation and training documentation. At the time of his injury, plaintiff

was employed by Vigor Marine as a boilermaker and welder. According to plaintiff, Vigor Marine would assign him to complete limited jobs for Vigor Fab "about once a year." And, according to Vigor Industrial's Secretary and General Counsel, Ballou, such assignments were made pursuant to "an unwritten but understood 'service sharing agreement' between" Vigor Industrial's subsidiaries. Plaintiff was on temporary assignment with Vigor Fab when he was injured.

Plaintiff filed an LHWCA claim for workers' compensation benefits shortly after the incident, naming Vigor Marine as his employer. Vigor Industrial's human resources and legal departments handled that claim, assisting Vigor Marine in its defense of that claim, and coordinating with Vigor Industrial's insurance carrier regarding plaintiff's benefits and coverage. Plaintiff filed this negligence case against Vigor Fab, alleging that his employer, Vigor Marine, was a "separate company from" Vigor Fab. He also alleged that the work he was performing for Vigor Fab was inherently dangerous, bringing it under Oregon's ELA. ORS 654.305.

Vigor Fab moved for summary judgment, arguing that "[p]laintiff is trying to 'double-dip' from two entities—Vigor Fab and Vigor Marine—which operate as a single entity for purposes of the exclusivity provision of the LHWCA." Vigor Fab supported its motion with the declaration of Ballou, who testified to the business and labor practices of Vigor Industrial, Vigor Fab, and Vigor Marine. Relying on the "single entity doctrine," which we discuss below, Vigor Fab argued that it qualified as plaintiff's employer under the LHWCA and that plaintiff's ELA claim was barred because his exclusive remedy was the workers' compensation claim he had already filed.

In opposition to Vigor Fab's motion, plaintiff submitted a declaration with several attached exhibits. In that declaration, plaintiff stated that he was hired by Vigor Marine, received payments from Vigor Marine, was supervised by employees of Vigor Marine, and that no one working for Vigor Fab had the authority to fire him. He also stated that he had "never heard of an 'unwritten but understood service sharing agreement' between Vigor Marine and Vigor Fab,"

and that, in his experience, "employees for those two com-
panies are completely separate and not shared freely[.]" He
nevertheless acknowledged that he was working on a Vigor
Fab job at the time of his injury, that he worked on Vigor
Fab projects "about once a year," and that Vigor Fab com-
municated with his Vigor Marine supervisors, who directed
him on Vigor Fab jobs. He emphasized the separate legal
status of Vigor Fab and Vigor Marine and the fact that they
each have their own website to support his argument that
an issue of fact exists as to whether they are a single entity
under the LHWCA.

The trial court noted that the parties were in agree-
ment about the applicable legal test: Whether two discrete
companies represent a single entity for purposes of LHWCA
liability is governed by the "single entity test" articulated
in *Claudio v. United States*, 907 F Supp 581, 586-89 (EDNY
1995). The court applied the single entity test to the record
before it and concluded that there was no genuine issue of
material fact and that Vigor Fab and Vigor Marine were
"functionally integrated." As such, the court held, they qual-
ify as a single entity entitling both Vigor Marine and Vigor
Fab to the tort immunity provided by the LHWCA exclusive
remedy provision, barring plaintiff's ELA claim as a matter
of law. It granted the motion for summary judgment and
thereafter dismissed plaintiff's lawsuit.

Plaintiff appeals, arguing that the trial court erred
by granting Vigor Fab's motion. He renews the argument
that he made before the trial court: that genuine issues of
material fact remain on the question of whether Vigor Fab
and Vigor Marine are a single entity under the LHWCA and
that Vigor Fab is not entitled to judgment as a matter of
law.

The LHWCA is a federal workers' compensation law
that covers persons engaged in maritime employment:

> "The term 'employee' means any person engaged in
> maritime employment, including any longshoreman or
> other person engaged in longshoring operations, and any
> harbor-worker including a ship repairman, shipbuilder,
> and ship-breaker ***."

33 USC § 902(3).

> "Except as otherwise provided in this section, compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)."

33 USC § 903(a). The LHWCA provides the exclusive remedy for longshoremen and harbor workers against their employers for on-the-job injuries:

> "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee *** except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee *** may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death."

33 USC § 905(a). Federal courts have interpreted the law's exclusivity provision as "absolute" because it "'completely obliterates the rights at common, civil or maritime law against'" an employer. *Fisher v. Halliburton*, 703 F Supp 2d 639, 656 (SD Tex 2010), *vac'd and rem'd on other grounds*, 667 F3d 602 (5th Cir 2012) (quoting *Nations v. Morris*, 483 F2d 577, 587 (5th Cir 1973)); *see also Ross v. DynCorp*, 362 F Supp 2d 344, 352 (D DC 2005) (explaining that 33 USC section 905(a) "'destroys any underlying tort liability of the employer'" and "necessarily displaces all derivative common-law causes of action based on the injury or death of a covered employee caused by employer negligence" (quoting *Robin v. Sun Oil Co.*, 548 F2d 554, 556 (5th Cir 1977))).

Congress crafted the LHWCA exclusive remedy provision to benefit both employers and employees; like other workers' compensation schemes, it operates as a "classic *quid pro quo*." *Bush v. Eagle-Picher Indus.*, 927 F2d 445, 448 (9th Cir 1991). The law

> "was designed to strike a balance between the concerns of longshoremen and harbor workers on the one hand, and their employers on the other. Employers relinquished their

defenses to tort actions in exchange for limited and pre-
dictable liability. Employees accept the limited recovery
because they receive prompt relief without the expense,
uncertainty, and delay that tort actions entail."

*Morrison-Knudsen Constr. Co. v. Director*, 461 US 624, 636,
103 S Ct 2045, 76 L Ed 2d 194 (1983).

The exclusive remedy provision bars tort claims
against LHWCA-compliant employers, which may include
multiple entities that are subject to single management
and control and that effectively operate as a "single entity."[1]
*Claudio*, 907 F Supp at 588; *see also Price v. Atlantic Ro-Ro
Carriers, Inc.*, 262 F Supp 3d 289, 294 (D Md 2017) (apply-
ing the single entity test in a third-party indemnity action
and concluding that an employer cannot be held liable to
a defendant against whom an employee has a non-LHWCA
claim). The *Claudio* court applied the single entity doctrine
to two companies in an LHWCA case after reviewing New
York workers' compensation law as well as the application
of the doctrine in National Labor Relations Act (NLRA) and
Sherman Act cases. *Claudio*, 907 F Supp at 586-87; *see also
Price*, 262 F Supp 3d at 294-95; *Longshore v. Davis Sys. of
Capital Dist.*, 759 NYS 2d 204, 206, 304 AD 2d 964 (2003).
Federal courts have long considered New York's interpre-
tation of its law "very persuasive" when construing the
LHWCA, *see, e.g.*, *Iacone v. Cardillo*, 208 F2d 696, 697-98
(2d Cir 1953), and have relied on that body of New York
law to develop the single entity doctrine in both LHWCA
and NLRA cases concerning employee efforts to recover
from multiple entities, *Claudio*, 907 F Supp at 586. *See also
Smither & Co. v. Coles*, 242 F2d at 220, 222-23 (DC Cir), *cert
den*, 354 US 914 (1957).

The single entity doctrine disregards separate cor-
porate existence, instead treating separate entities as single

---

[1] Although we are not bound by the interpretations of federal law by federal
district courts or federal courts of appeal, *Page v. Palmateer*, 336 Or 379, 390,
84 P3d 133, *cert den*, 543 US 866 (2004), both parties rely on the framework
developed in those federal cases to support their respective arguments about the
proper construction of the LHWCA. We see no reason to depart from that frame-
work. *See State v. Kell*, 303 Or 89, 95, 734 P2d 334 (1987) ("[T]here is no value
in being different merely for the sake of the difference."). Accordingly, we apply
those courts' interpretation of the LHWCA.

entity when (1) their operations are interrelated; (2) they have common management; (3) their labor relations are centrally controlled; and (4) they have common ownership. *Claudio*, 907 F Supp at 588; *see also Grane Health Care v. NLRB*, 712 F3d 145, 150 (3d Cir 2013); *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F2d 1117, 1122 (3d Cir 1982). So long as the entities' labor and employment operations are functionally integrated, and they follow the LHWCA insurance requirements, the exclusive remedy provision will apply, and those entities will be insulated from tort liability for their employee's on-the-job injuries. In *Claudio*, for example, the court concluded that the two companies at issue functioned as a single entity because they shared the same corporate offices, had the same address, post office box, and phone number, jointly allocated the costs and profits of their jobs, and worked together to complete their jobs. In addition, the court noted that the industry recognized the two companies as one entity. Accordingly, the court concluded that the exclusive remedy provision applied to both. *Claudio*, 907 F Supp at 588.

*Price* involved entities that had separate accounting practices, maintained separate business records, and billed separately for their services. 262 F Supp 3d at 294. However, they were subject to the direction of the same board of directors that managed the finances for each entity, and they often exchanged capital and labor. They also shared control over labor relations and covered their employees under the same workers' compensation insurance policy. The court granted summary judgment to the named entity on the basis of the single entity doctrine and dismissed the third-party plaintiff's indemnity action against it. The court explained that common management, overlapping officers, identical board of directors, and common ownership rendered the two companies functionally integrated and thus a "single entity" for the purposes of the LHWCA. *Id.* at 296.

Turning to the facts and arguments presented on summary judgment in this case, we understand plaintiff to present two distinct arguments: (1) because Vigor Fab "asked the trial court to basically pierce the corporate veil, without a showing of fraud or other improper conduct," the court could not grant its motion for summary judgment,

and (2) he raised a sufficient question of fact—as to whether Vigor Fab and Vigor Marine were a single entity—to defeat defendant's motion for summary judgment.

We first address plaintiff's corporate veil argument because it presents a threshold legal question about whether the trial court misapplied the relevant analytical framework.[2] We reject that argument because the court did not, in fact, "pierce the corporate veil." Rather, it properly applied the relevant federal precedent to determine whether Vigor Fab and Vigor Marine constitute a "single entity" for purposes of the LHWCA exclusive remedy provision. Piercing the corporate veil is a legal strategy used to hold shareholders liable for the actions or debts of the corporation after the shareholders improperly avail themselves of the corporate form as a protection from direct liability. *Amfac Foods v. Int'l Systems*, 294 Or 94, 108, 654 P2d 1092 (1982); *OPERB v. Simat, Helliesen & Eichner*, 191 Or App 408, 429, 83 P3d 350 (2004). That is not what happened here.

It is true, as plaintiff points out, that the Sixth Circuit, in a workers' compensation case, *Boggs v. Blue Diamond Coal Co.*, 590 F2d 655 (6th Cir), *cert den*, 444 US 836 (1979), likened a defensive strategy similar to the one Vigor Fab employed here to "piercing the corporate veil." However, *Boggs* is not an LHWCA case, and it predates each of the LHWCA cases that employ the single entity doctrine. Moreover, the law often treats separate corporations as single entities for limited purposes. *See, e.g.*, *Copperweld Corp. v. Independence Tube Corp.*, 467 US 752, 771, 104 S Ct 2731, 81 L Ed 2d 628 (1983) (viewing a parent and wholly owned subsidiary as one corporate entity for the purposes of determining liability under section 1 of the Sherman Act); *Radio & Television Broadcast Technicians Local 1264 v. Broadcast Service of Mobile, Inc.*, 380 US 255, 256, 85 S Ct 876, 13 L Ed 2d 789 (1965) (under the NLRA, "several nominally

---

[2] We do not understand plaintiff to argue that the trial court applied the entirely wrong analytical framework to the facts of the case. Rather, we understand him to take issue with elements of its analysis under *Claudio* and *Price* that look beyond the corporate form of Vigor Fab, Vigor Marine, and Vigor Industrial to conclude that they operate as a "single entity" for the purposes of the LHWCA. He otherwise agrees that *Claudio* and *Price* apply—just that they do not permit the court to "pierce the corporate veil."

separate business entities" are considered "a single employer where they comprise an integrated enterprise"); *Fallone v. Misericordia Hosp.*, 259 NYS 2d 947, 952, 23 AD 2d 222 (1965) (treating multiple entities as one under New York workers' compensation law). There is nothing unusual about the court's finding that Vigor Fab, Vigor Marine, and Vigor Industrial were one entity under the LHWCA. Plaintiff's corporate veil argument misses the mark and we reject it.

We now turn to plaintiff's argument that his affidavit, submitted in opposition to Vigor Fab's motion, raised a genuine issue of material fact as to whether Vigor Fab and Vigor Marine are a single entity. Notwithstanding defendant's argument to the contrary, Vigor Fab bears the burden of persuasion on its affirmative defense, *Nelson v. Hughes*, 290 Or 653, 664-65, 625 P2d 643 (1981), and there is no burden shifting under ORCP 47 C. Our task is to review the summary judgment record to determine whether it could reasonably support more than one material factual finding as to Vigor Fab's status as an employer entitled to the benefit of the exclusive remedy provision under the LHWCA. ORCP 47 C.

It is not sufficient for plaintiff to declare that he is unaware of the veracity of defendant's evidence. Under ORCP 47 D,

> "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest on the mere allegations or denials of that party's pleading; rather, the adverse party's response, by affidavits, declarations, or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial."

An affidavit or declaration in opposition to a summary judgment motion must be made on "personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant or declarant is competent to testify to the matters stated therein." *Id.* The "personal knowledge" requirement is satisfied "if, from the content of the affidavit read as a whole, an objectively reasonable person would understand that statements in the affidavit are made from the affiant's personal knowledge

and are otherwise within the affiant's competence." *West v. Allied Signal, Inc.*, 200 Or App 182, 190, 113 P3d 983 (2005).

With those standards in mind, and in reviewing the evidence in the light most favorable to plaintiff, we conclude that the trial court did not err in granting defendant's motion for summary judgment. Vigor Fab and Vigor Marine were functionally integrated and thus a single entity for purposes of the LHWCA exclusivity provision. Like the companies in *Price* and *Claudio*, Vigor Fab and Vigor Marine worked together under common management, leadership, and ownership. Both entities were covered by Vigor Industrial under the same workers' compensation insurance policy. That Vigor Fab's operations do not overlap in precisely every detail with those of Vigor Marine does not raise a triable issue of fact on the single entity question because, as we explain, the record establishes that their *labor* practices are, in fact, functionally integrated. *See Price*, 262 F Supp 3d at 295.

An analysis of the summary judgment record using the four factors articulated in *Claudio* confirms that Vigor Fab and Vigor Marine are functionally integrated for LHWCA purposes.[3] First, Vigor Fab and Vigor Marine possessed interrelated operations. They engaged in shipbuilding and ship repair on the same Swan Island property, and, as was the case here, they would occasionally have employees of one company complete jobs for the other company. It is true that Vigor Fab manufactures vessels and Vigor Marine repairs them, but that distinction does not raise an issue of fact given that Vigor Industrial's website does not differentiate between its subsidiaries, it calculates its profits and losses across all of its subsidiaries, and Vigor Fab and Vigor Marine each have the capacity for industrial harbor work on the same property, at the same address, and, occasionally, with the same employees.

---

[3] The Ninth Circuit Court of Appeals has not directly applied the *Claudio* factors to an LHWCA case, but one court within the Ninth Circuit has done so. *See Davenport v. New Horizon*, No C01-0933, 2002 WL 32098289 at *4 (ND Cal, Dec 18, 2002). And the parties agree that the applicable legal test is the single entity test that is discussed in *Claudio*. We are not aware of any other federal circuit court of appeal adopting or applying a different test or criteria to LHWCA cases. Accordingly, we apply the single entity test to the facts of this case utilizing the four factors articulated in *Claudio*.

Plaintiff acknowledges interrelated operations between Vigor Fab and Vigor Marine as well as overlap in their leadership structures. However, he argues that the facts of this case are distinguishable from *Claudio* and *Price*, asserting that outsiders, employees, and regulatory agencies do not regard Vigor Fab and Vigor Marine as a single entity, and that even Vigor Fab's evidence shows that the companies operate as "distinct businesses." But the fact that Vigor Fab and Vigor Marine are distinct *legal* entities is not in dispute. The relevant question is whether the employment practices of Vigor Fab and Vigor Marine are sufficiently interrelated to support disregarding the separate corporate existence of each in favor of viewing them as a single entity for purposes of the LHWCA. While it is true, as plaintiff points out, that the *Claudio* court considered the perceptions of others when discussing the "interrelated operations" factor, there is nothing in that opinion that suggests those other views were dispositive. And, in *Price,* the court did not mention the views of others when it concluded that the entities in that case qualified as a single entity for purposes of the LHWCA. *See generally Price*, 262 F Supp 3d at 294. The undisputed evidence in the summary judgment record before us establishes that Vigor Fab and Vigor Marine operations are sufficiently interrelated to meet the single entity test.

Second, Vigor Fab and Vigor Marine also share common management and leadership with their parent company, Vigor Industrial. Ballou's declaration testimony in that regard is not put in dispute by plaintiff's submissions in opposition to Vigor Fab's summary judgment motion.

Third, Vigor Industrial retains centralized control of labor relations among both companies. Neither company could hire, fire, or otherwise manage its personnel without the assistance of Vigor Industrial's human resources, procurement, finance, and information technology departments. If an employee filed a workers' compensation claim against either company, Vigor Industrial's human resources department would handle the claim, and its common insurance carrier would pay. Although the two companies retain nominal corporate independence for a number of purposes, they are dependent on their parent, Vigor Industrial, for a

significant portion of their labor relations—including the handling of workers' compensation or tort claims, and for the right to control and terminate plaintiff's employment.

Plaintiff's declaration states that Vigor Fab could not fire him. But it does not set forth the source of plaintiff's knowledge or the basis on which plaintiff offers that testimony. And, even assuming that he has adequate knowledge to supply that testimony, it is not relevant because plaintiff does not dispute that Vigor Industrial has the authority to fire him. Plaintiff also testified that he "had never heard of an 'unwritten but understood service sharing agreement' between Vigor Marine and Vigor Fab"; that, in his experience, the two companies did not "freely share[]" their employees; and that it was "unusual" for him to work for Vigor Fab. However, he admitted that he did, in fact, work on a Vigor Fab project at the time of his injury, and that he had a history of working on such projects "about once a year." None of plaintiff's statements supply facts based on personal knowledge, under ORCP 47 D, sufficient to overcome the evidence that Vigor Fab produced concerning the companies' labor practices; they do not demonstrate he has the "competence" under ORCP 47 D to testify as to the relevant employment practices; and they do not create an issue of material fact on their own. *West*, 200 Or App at 190. Rather, Ballou's declaration states, and plaintiff does not dispute, that Vigor Fab and Vigor Marine shared employees.

Finally, plaintiff does not dispute that Vigor Fab and Vigor Marine are owned by the same parent company. An analysis of the summary judgment record applying the four *Claudio* factors therefore demonstrates that Vigor Fab and Vigor Marine are a single entity for LHWCA purposes. No reasonable jury could find otherwise. Vigor Fab and Vigor Marine were both plaintiff's employer under the single entity test. Having provided coverage for plaintiff's on-the-job injury under the LHWCA, plaintiff is barred from bringing this ELA claim against Vigor Fab. The trial court did not err.

Affirmed.